# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**RUBY JEAN SALYER,**

    **Plaintiff,**

    v.

**Civil Action 2:17-cv-89**
**Judge Algenon L. Marbley**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Ruby Jean Salyer, who is proceeding without the assistance of counsel, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Period of Disability Insurance, Disability Insurance benefits and Supplemental Security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 10). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND[1]

Plaintiff protectively filed her application for Period of Disability Insurance, Disability Insurance benefits, and a Title XVI application for Supplemental Security income on March 27, 2013. (R. at 18.) In both applications, Plaintiff alleged a disability onset date of March 27, 2013. Plaintiff's application was denied initially on September 27, 2013, and upon reconsideration on February 4, 2014. Plaintiff sought a review before an administrative law judge.

Plaintiff had previously filed for Period of Disability Insurance, Disability Insurance benefits, and Supplemental Security Income on May 11, 2010. (R. at 18; 78–100.) Administrative Law Judge Christopher B. McNeil denied Plaintiff's claims on November 29, 2011, and his decision was affirmed by the Appeals Council on January 9, 2013. (*Id.*) However, Plaintiff submitted new and material evidence, thus the administrative law judge in the current review was not bound by the previous ALJ's decision. (*See id.* at 18, citing Acquiescence Rulings 98-3(6) and 98-4(6).)

In her most recent application for benefits, Administrative Law Judge John Robert Montgomery (the "ALJ") held a hearing on August 28, 2015, at which Plaintiff, who was represented by counsel at that time, appeared and testified. (R. at 38–77.) Eric W. Pruitt, a vocational expert ("VE"), also appeared and testified at the hearing. On December 17, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 18–32.) On January 3, 2017, the Appeals Council denied Plaintiff's request for review and affirmed the ALJ's decision. (*Id.* at 1–4.) Plaintiff then timely filed this action on

---

[1] For the sake of brevity, the undersigned provides a brief outline of the procedural history and will discuss the record evidence and hearing testimony as necessary to address Plaintiff's contentions of error within the Analysis Section.

January 30, 2017. (ECF No. 1.)

In her Statement of Errors, Plaintiff raises numerous errors in the ALJ's decision. (ECF No. 12.) Plaintiff references specific pages in the record not mentioned by the ALJ and also attaches an annotated portion of the administrative record, highlighting what appears to be Plaintiff's evidence to support her challenges to the ALJ's opinion. (*Id.* at ECF No. 12-1.) Plaintiff's contentions of error are best be characterized as (1) challenging the ALJ's step-two findings and (2) challenging the ALJ's residual functional capacity ("RFC")2 assessment.

In her Memorandum in Opposition, the Commissioner first argues that Plaintiff has not made any legally cognizable arguments. (ECF No. 13, at 4–5.) She next posits that regardless, substantial evidence supports both the ALJ's step-two analysis and his RFC determination. (*Id.* at 5–14.) The Commissioner also adds that substantial evidence supports the ALJ's credibility determination and that the ALJ properly relied upon the VE's testimony. (*Id.* at 14–16, 20.)

In her Reply, Plaintiff responds to the Commissioner's briefing relating to her credibility, explaining that she did not seek injections for pain because she was scared of getting the shots and that she did inform the ALJ that she had cut back on cigarettes and had lost some weight. She also reiterates her medical conditions and various medications she is on for those conditions.

## II. THE ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not been under a disability within the meaning of the Social Security Act since March 27, 2013, the alleged disability onset date. At step one of the

---

2 A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

sequential evaluation process,[3] the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015, for her Period of Disability and Disability Insurance benefits claims. (R. at 21.) The ALJ also determined that Plaintiff had not engaged in substantial gainful activity since March 27, 2013. (*Id.*) At step two of the analysis, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; rheumatoid arthritis; arthritis adhesive capsulitis; obesity; glaucoma; amplyopia; affective disorder; and anxiety disorder. (*Id.*) The ALJ concluded that several of Plaintiff's other medically determinable impairments, including fibromyalgia, high cholesterol, high blood pressure, and erythrocytosis, were not severe. (*Id.*) The ALJ next found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 22.)

At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. See 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except, the claimant can lift/carry no more than ten pounds, push/pull to the same extent in the lower right extremity and in the left upper extremity, with not more than frequent overhead reaching with the right upper extremity and no use of foot controls with the left foot. The claimant can stand/walk for 30 minutes out of four hours in an eight-hour workday and can sit for two hours out of six hours in an eight-hour workday. The claimant is unable to kneel, crawl, or use of ladders, ropes or scaffolds, but can occasionally balance, crouch, and climb ramps or stairs. Due to visual impairments, the claimant must avoid all exposure to unprotected heights, dangerous machinery, and commercial driving. Mentally, the claimant is limited to simple, routine tasks without fast pace or frequent changes, and with no more than occasional interaction with others.

(R. at 24–25.) In assessing Plaintiff's RFC, the ALJ discussed the record evidence and Plaintiff's testimony and ultimately concluded that Plaintiff's allegations were not credible.

Relying on VE's testimony, the ALJ determined that although Plaintiff was not able to do her past relevant work, there were other jobs in significant numbers in the national economy that complied with Plaintiff's RCF limitations. (R. at 31.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.

## III. THE STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

5

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)) *cert. denied sub nom. Paper, Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.*, 537 U.S. 1106 (2003). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## IV. ANALYSIS

The undersigned finds Plaintiff's challenges to the ALJ's step-two findings and his RFC assessment to be without merit.

### A. The ALJ's Step-Two Determination

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803-04 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are

'totally groundless' solely from a medical standpoint." *Id*. at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985).

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "A severe mental impairment is 'established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.'" *Griffith v. Comm'r*, 582 F. App'x 555, 559 (6th Cir. 2014) (quoting 20 C.F.R. § 416.908). Thus, if no signs or laboratory findings substantiate the existence of an impairment, it is appropriate to terminate the disability analysis. *See* SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996) ("In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process set out in 20 CFR 404.1520 and 416.920 . . . ."). Significantly, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment." SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996). "[S]ymptoms" consist of a claimant's description of his or her alleged impairment." 20 C.F.R. § 404.1528(a). In contrast, "signs" include "psychological abnormalities which can be observed." 20 C.F.R. § 404.1528(a)-(b).

Where, as here, the ALJ determines that a claimant had a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting

7

effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same). Severe or non-severe, an ALJ need only include limitations arising from an impairment where the impairment affects a claimant's capacity to work. *See Griffeth v. Comm'r*, 217 F. App'x 425, 426 (6th Cir. 2007) ("The RFC describes the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities. A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." (internal quotation marks and citations omitted)).

In this case, the ALJ found that Plaintiff had the following severe conditions: degenerative disc disease, rheumatoid arthritis, arthritis adhesive capsulitis, obesity, glaucoma, amplyopia, affective disorder, and anxiety disorder. (R. at 21.) In her Statement of Errors, Plaintiff contends that the ALJ erred by failing to classify several of her other impairments as severe. Specifically, Plaintiff submits that her depression, vision loss (specifically, her right-eye blindness), migraines, and incontinence were severe impairments. With respect to her alleged depression, Plaintiff posits that the ALJ failed to consider that she had been seeing a psychiatrist for over a year to treat her depression. With respect to her alleged right-eye blindness, Plaintiff states that the record reflects that she visited the eye doctor at least once per year and sometimes

more. With respect to her alleged migraines, Plaintiff asserts that the record shows that she suffered migraines "as far back as 2010-2014." (Pl.'s Statement of Errors 2, ECF No. 12.) With respect to her alleged incontinence, Plaintiff represents that she has been treated with medication, but that it has only "slightly helped." (*Id.*)

Contrary to Plaintiff's assertion, the ALJ did consider her depression to be a severe impairment at step two of his analysis. Plaintiff's confusion is attributable to the ALJ using the term "affective disorder" rather than "depression" to describe the impairment. "Affective disorder" is a broad label that encompasses several psychiatric diagnoses, including depression. *See Doles v. Comm'r of Soc. Sec.*, No. 2:10-cv-521, 2011 WL 2214144, at * 2 (S.D. Ohio June 7, 2011) (noting that affective disorders under Section 12.04 include mental disorders such as depression). Review of the ALJ's decision makes clear that he considered Plaintiff's depression specifically and included a discussion of her treatment history and medications. (*See* R. at 27 (noting that Plaintiff was taking Cymbalta and Wellbutrin, that she "received psychotherapy [from] a mental health care provider from 2011 through 2012," discussing her symptoms, acknowledging that Plaintiff had some depression in 2014 and that it was not well controlled in 2015).) The mental RFC the ALJ assessed also includes several limitations to accommodate Plaintiff's depression and other mental impairments.

The ALJ likewise considered Plaintiff's right-eye impairments. As set forth above, the ALJ concluded that Plaintiff had two severe vision impairments at step two, glaucoma and amblyopia. The ALJ also considered Listing 2.02 (loss of central visual acuity) and Listing 2.04 (loss of visual efficiency, or visual impairment in the better eye) and offered the following discussion:

> The claimant's baseline acuity in her better eye is 20/70. This exceeds the remaining vision in the better eye after best correction threshold of 20/200 or less under Listing 2.02. Likewise, the claimant's visual efficiency percentage translates to 65 percent, and her visual impairment value translates to 0.54 after best correction, which do not satisfy the requirements of Listing 2.04.

(R. at 23 (internal citations to the record omitted).) Moreover, the ALJ offered the following additional discussion regarding Plaintiff's alleged visual impairments:

> In terms of the claimant's alleged visual impairments, in December 2012, the claimant underwent right eye surgery. In February 2013, the claimant reported her eye was healing well and that she had no double vision; she indicated that she was "happy with results" of the procedure. Also in February 2013, although her right eye visual acuity was limited to light perception, her left eye visual acuity was between 20/60 and 20/80. The following year, in May and June 2014, the claimant reported no blurred or double vision. Likewise, in January 2015, the claimant denied headaches, vision changes, and dizziness. The claimant did undergo eye surgery, which certainly suggests that the symptoms were genuine. While that fact would normally weigh in the claimant's favor, it is offset by the facts that the record reflects that the surgery was generally successful and that she retains visual acuity in her left (better) eye. Moreover, postoperatively, the record reveals relatively infrequent trips to the doctor for allegedly disabling vision-related symptoms. As such the undersigned finds that the claimant's glaucoma and amblyopia are adequately accommodated in the above residual functional capacity by restriction her to essentially sedentary work, with additional postural and environmental limitations.

(R. at 26-27 (internal citations omitted).) This discussion reflects that the ALJ concluded that Plaintiff had severe vision impairments and accommodated those impairments by limiting her to a reduced range of sedentary work.

Finally, with regard to Plaintiff's migraines and incontinence, as the Commissioner points out, Plaintiff did not allege those conditions as impairments that limited her ability to work. (R. at 24; *see also* Comm.'s Mem. in Opp. 7, ECF No. 13.); *Cf. Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 642 (6th Cir. 2013) (ALJ does not err by failing to consider impairments that claimant does not raise, even if record may contain evidence to support them). Nor did she articulate how

10

these alleged impairments significantly interfere with her physical or mental ability to do basis work activities.  With respect to her headaches, although Plaintiff testified that she gets migraines about once per month, in follow-up questioning, she acknowledged that medications took care of them.  (R. at 55.)  In addition, as the ALJ points out in his decision, Plaintiff denied experiencing headaches during treatment in January 2015.  (R. at 27, 817.)  Significantly, none of Plaintiff's treating physicians opined that she had functional limitations attributable to her headaches or incontinence.  Similarly, none of the state agency reviewing physicians opined that Plaintiff required an RFC more restrictive than what the ALJ assessed as a result of these conditions.

In summary, the undersigned finds that the ALJ did not commit reversible error at step two.

**B.     The ALJ's RFC Determination**

In addition to the challenges discussed above, Plaintiff also contends that the ALJ erred in assessing her RFC because he did not account for her inability to straighten her left leg or the side effects from her medicines.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ is charged with the final responsibility for determining a claimant's residual functional capacity.  *See* 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner").  Moreover, the Social Security Act and agency regulations require an ALJ to determine a claimant's residual functional capacity based on the evidence as a whole.  42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI); 20 C.F.R. § 404.1545(a) ("the ALJ . . . is responsible for assessing your residual functional capacity").  As the

court recognized in *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222 (N.D. Ohio March 2, 2010), the ALJ is charged with evaluating several factors in determining the residual functional capacity, including the medical evidence (not limited to medical opinion testimony) and the claimant's testimony. *Id.* at *2 (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); Social Security Ruling 96-5p; Social Security Ruling 96-8p)).

An ALJ's residual functional capacity assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant non-medical evidence regarding what work a claimant is capable of performing. Social Security Ruling 96-5p. Social Security Ruling 96-8p instructs that the ALJ's residual functional capacity assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. Social Security Ruling 96-8p.

The applicable regulation, 20 C.F.R. § 404.1527(d)(2), also explains that "[a]lthough we consider opinions from medical sources on issues such as your residual functional capacity, . . . the final responsibility for deciding these issues is reserved to the Commissioner." The regulations do not require an ALJ to rely solely upon medical opinions when formulating a residual functional capacity, but instead explicitly require an ALJ to evaluate medical opinions based on their consistency with and support from "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2), (3), (4). Indeed, as the Sixth Circuit has held, physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health & Human Servs.*, 25

12

F.3d 284, 287 (6th Cir. 1994).

Here, the undersigned concludes that substantial evidence supports the ALJ's RFC. In determining Plaintiff's RFC, the ALJ relied on her medical treatment records, the opinion evidence, and her hearing testimony. (*Id.* at 27.) The ALJ assigned some weight to state agency medical consultants Teresita Cruz, M.D. and James Cacchillo, D.O., who found that Plaintiff could still perform light work. (*Id.* at 27–28; 107–115; 121–129;133–143.) The ALJ ultimately concluded, however, that Plaintiff was *more* limited than the state agency reviewers opined. Specifically, the ALJ limited to Plaintiff to the sedentary level of exertional with numerous additional limitations. (R. at 24.)

With regard to Plaintiff's left-leg impairment, the ALJ limited her to no use of foot controls with her left foot. He also determined that she could not kneel, crawl, or use ladders, ropes, or scaffolding. (*Id.* at 24–25.) Plaintiff relies upon her testimony and her own subjective reports to support her contention that she is more limited. The ALJ, however, found that Plaintiff was not fully credible:

> The degree of limitation alleged by the claimant is not supported by the objective medical evidence. While she testified in a very open, sincere, and honest manner, the claimant's subjective complaints and symptoms and limitations cannot be the basis of a finding of disability. Rather, medical evidence documenting continued medical abnormalities based on clinical and laboratory techniques is required to establish the presence and continuing severity of impairments and corresponding limitations. (20 CFR 404.1508 and 416.908).
>
> \* \* \*
>
> [T]he undersigned finds that while there may have been brief periods during which the claimant was more restricted, there has been no continuous 12-month period during which she could not perform the work described in the above residual functional capacity.

(R. at 29.) With regard to Plaintiff's alleged medication side effects, there are numerous instances in the record where Plaintiff reports that she does not have any side effects. (R. at 338, 376, 432, 506, 593.) Review of the decision makes clear that the ALJ's credibility determination is based upon consideration of the entire record and supported by substantial evidence. Thus, the undersigned finds that it is improper to disturb the ALJ's credibility determination. *See, e.g.*, *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)).

Plaintiff appears to take issue with the fact that the ALJ did not discuss specific facts from certain records. As the Commissioner points out, an ALJ "is not required to analyze the relevance of each piece of evidence individually." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011); *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ( "An ALJ need not discuss every piece of evidence in the record for his decision to stand."). Rather, "the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Bailey*, 413 F. App'x at 855 (quoting 20 C.F.R. § 404.953). The undersigned finds that the ALJ's decision contained these requisite findings of fact and reasons for his decision. Finally, the undersigned notes that even if some of the records Plaintiff cites support her contention that she is disabled, the Court cannot reverse an ALJ's decision where, as here, it is supported by substantial evidence. *See Blakely*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." (internal quotation marks and citation omitted)).

In summary, the undersigned finds that substantial evidence supports the ALJ's RFC assessment.

## V. DISPOSITION

For the reasons set forth above, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE